149 T.C. No. 18

UNITED STATES TAX COURT

PALMOLIVE BUILDING INVESTORS, LLC, DK PALMOLIVE BUILDING
INVESTORS PARTICIPANTS, LLC, TAX MATTERS PARTNER, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 23444-14.                          Filed October 10, 2017.

In 2004 partnership PB transferred a facade easement by
executing an easement deed in favor of a qualified organization. The
easement deed places restrictions on PB and its successors with
respect to the facade easement and the building. PB's building was
subject to two mortgages, but before executing the easement deed, PB
obtained ostensible mortgage subordination agreements from its
mortgagee banks. However, the easement deed provides that in the
event the facade easement is extinguished through a judicial pro-
ceeding, the mortgagee banks will have claims prior to that of the
donee organization to any proceeds received from the condemnation
proceedings, until the mortgage is satisfied. PB claimed a charitable
contribution deduction for 2004 for the facade easement contribution.

In a notice of final partnership administrative adjustment issued
to PB, R disallowed PB's claimed charitable contribution deduction
for the donation of the facade easement and also determined that PB
is liable for a gross valuation misstatement penalty under I.R.C. sec.
6662(h) and (a) or alternatively for a substantial understatement of

income tax, negligence or disregard of rules or regulations, or a substantial valuation misstatement penalty under I.R.C. sec. 6662(a) and (b)(1), (2), or (3). DK, PB's TMP, filed a petition in this Court challenging these determinations, and R filed a motion for partial summary judgment under Rule 121.

R argues that the easement deed does not satisfy the perpetuity requirements of I.R.C. sec. 170 and 26 C.F.R. sec. 1.170A-14(g)(6)(ii), Income Tax Regs., because it provides the mortgagees with prior claims to extinguishment proceeds in preference to the donee. PB argues the contrary, citing Kaufman v. Shulman, 687 F.3d 21 (1st Cir. 2012), aff'g in part, vacating in part, and remanding in part Kaufman v. Commissioner, 136 T.C. 294 (2011), and 134 T.C. 182 (2010). Alternatively, PB argues that if the easement deed does otherwise violate the perpetuity requirement of I.R.C. sec. 170 and the regulation, the easement deed contains a saving clause that will retroactively reform the deed to comply with the perpetuity requirements of sec. 1.170A-14(g)(6)(ii).

Held: In this case, presumably appealable to the U.S. Court of Appeals for the Seventh Circuit, we are not bound by the opinion of the U.S. Court of Appeals for the First Circuit in Kaufman v. Shulman, see Golsen v. Commissioner, 54 T.C. 742, 757 (1970), aff'd, 445 F.2d 985 (10th Cir. 1971), and we will follow Kaufman v. Commissioner; we will not follow Kaufman v. Shulman.

Held, further, PB's easement deed fails to satisfy the "in perpetuity" requirement of I.R.C. sec. 170(h)(5) because, first, the mortgages on the building were not fully subordinated to the easement as required by sec. 1.170A-14(g)(2), and, second, because the donee was not guaranteed to receive the share of proceeds mandated by sec. 1.170A-14(g)(6)(ii) in the event that the easement was extinguished and the donor subsequently conveyed the property and received proceeds for it. Thus, the facade easement contribution was not a qualified conservation contribution under I.R.C. sec. 170(h), and PB is not entitled to a charitable contribution deduction.

Held, further, the defects in the easement deed are not cured by a provision that purports to retroactively amend the deed, because the requirements of I.R.C. sec. 170 must be satisfied at the time of the gift.

Jeffrey H. Paravano and Michelle M. Hervey, for petitioner.

David A. Lee, Thomas F. Harriman, Elizabeth Y. Williams, and Robert J. Basso, for respondent.

CONTENTS

Background. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    The property and the charitable donation . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    The mortgage and its "subordination". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    The Deed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    The IRS's examination, the FPAA, and the petition . . . . . . . . . . . . . . . . . . 14

Discussion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    I.      General principles . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        A.     Summary judgment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
        B.     Conservation contributions . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
        C.     Perpetuity requirement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

               1.     Mortgages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
               2.     Extinguishment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
               3.     Proceeds from extinguishment . . . . . . . . . . . . . . . . . . 20

II.    The parties' contentions. . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

    A.    The Commissioner's contentions . . . . . . . . . . . . . . . . . . . . . . 21
    B.    Palmolive's contentions . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

III.    Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

    A.    The Deed does not satisfy the perpetuity requirement of
           section 170(h)(5)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

          1.    Section 1.170A-14(g)(2) of the regulations requires
                that the mortgages be subordinated . . . . . . . . . . . . . . . 24

                a.    Actual subordination is required. . . . . . . . . . . . 24
                b.    Supposed prevention of the extinguishment of
                      the easement by foreclosure is not an adequate
                      substitute for subordination. . . . . . . . . . . . . . . . 25
                c.    Subordination of a mortgage must include
                      subordination as to insurance proceeds in the
                      event the property is destroyed. . . . . . . . . . . . . . 27

          2.    Section 1.170A-14(g)(6) of the regulations requires
                that the donee must receive a "property right" that
                entitles it to receive proceeds from any disposition
                after extinguishment. . . . . . . . . . . . . . . . . . . . . . . . . . 30

          3.    Section 1.170A-14(g)(3) of the regulations does
                 not excuse non-compliance with sections -14(g)(2)
                 and (g)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

    B.    The "saving" clause does not cure the Deed. . . . . . . . . . . . . 40

APPENDIX. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

- 5 -

OPINION

GUSTAFSON, Judge: On July 28, 2014, the Internal Revenue Service ("IRS") issued a notice of final partnership administrative adjustment ("FPAA") for the taxable year ending December 31, 2004, to DK Palmolive Building Investors Participants, LLC, the tax matters partner ("TMP") for Palmolive Building Investors, LLC ("Palmolive"). This case is a TEFRA partnership-level action based on a petition filed by the TMP pursuant to section 6226.[1] At issue is Palmolive's entitlement to a charitable contribution deduction for its donation of a facade easement. Now before the Court is a motion for partial summary judgment filed by petitioner and a cross-motion for partial summary judgment filed by respondent, the Commissioner of the IRS. These cross-motions present the question whether Palmolive's easement deed satisfied the perpetuity requirements of section 170(h)(5) and 26 C.F.R. section 1.170A-14(g)(2) and (6), Income Tax Regs.[2] As explained below, we will deny Palmolive's motion for partial summary

_____

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code (26 U.S.C.; "I.R.C." or "the Code"), as amended and in effect for the relevant year, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]Because, in deciding this issue, we determine that Palmolive is not entitled to the charitable contribution deduction at issue, we need not reach other issues the
(continued...)

judgment and grant the Commissioner's cross-motion for partial summary judgment.

## Background

### The property and the charitable donation

Palmolive owns the Palmolive Building on North Michigan Avenue in Chicago, Illinois (the "building"), which it acquired for approximately $58.5 million in May 2001.[3] On December 21, 2004, Palmolive executed an easement deed (called a "Conservation Right"; hereinafter referred to as "the Deed") in favor of the Landmarks Preservation Council of Illinois ("LPCI" or "donee"), an Illinois not-for-profit corporation and a qualified organization within the meaning

---

[2](...continued)
parties have presented--i.e., whether Palmolive satisfied the substantiation requirements of section 170(f)(8) and whether the easement violated the perpetuity requirements of section 170(h)(2)(C) and (5)(A) by allowing Palmolive to make changes to the property.

[3]Palmolive owned the building indirectly through three entities, each of which owned separate portions of the building and related property: (1) Palmolive Building Facade, LLC ("Facade LLC"), owned the facade and air rights; (2) Palmolive Building Retail, LLC, owned floors 1 through 4, except for the facade thereon and portions of floors 1 and 2; and (3) Palmolive Tower Condominiums, LLC, owned the remainder of the building. Facade LLC signed the Deed to LPCI, but Facade LLC was a "disregarded", single-member LLC wholly owned by Palmolive. Neither party suggests any different analysis if Facade LLC rather than Palmolive is deemed the donor.

of section 170(h)(3); and Palmolive filed the Deed with the Cook County Recorder of Deeds.

The stated purpose of the Deed is to preserve the exterior perimeter walls of the building's facade (called "the protected elements").[4]  The Deed (quoted below) obligates Palmolive and any subsequent owner of the building to maintain in perpetuity the protected elements of the building.  The Deed prohibits Palmolive from demolishing, removing, or altering the protected elements, from making any horizontal or vertical expansion of the building, and from performing any chemical cleaning or sandblasting of the protected elements without LPCI's permission.

The mortgage and its "subordination"

At the time of the execution of the Deed, two mortgages encumbered the building, one owed to Corus Bank, N.A. ("Corus"), and the other to the National Electrical Benefit Fund ("NEBF").[5]  Each mortgage had an outstanding balance of

---

[4]The protected elements are defined as: "1. All visible exterior elevations, including their rooflines; and, 2. The rooftop mast of the former Palmolive Beacon."

[5]The NEBF loan appears to have originally been multiple loans, eventually consolidated before 2004, entered into in connection with acquiring the Building, and the Corus loan appears to have been a construction loan entered into in October of 2003.

approximately $55.6 million as of December 21, 2004. Both the Corus mortgage and the NEBF mortgage[6] obliged Palmolive to maintain insurance on the entire property (including the facade) and granted to the mortgagees Palmolive's right to insurance proceeds.[7]

Before executing the Deed with LPCI (and in accordance with Palmolive's undertaking in paragraph 20 of the Deed, quoted below), Palmolive secured an ostensible agreement from both lenders to subordinate their mortgages in the property to LPCI's rights to enforce the purposes of the easement. Corus's "Mortgage Subordination" states:

> CORUS BANK, N.A. hereby acknowledges and agrees that it is the mortgagee and/or secured party under those mortgages and security documents (collectively, the "Security Documents") described on Appendix I (CORUS) to this Mortgage Subordination, and that it hereby subordinates each and every of such Security Documents to this Conservation Right, as provided in, and <u>subject to the terms, conditions and limitations of Paragraph 20</u> hereof. [Emphasis added.[8]]

---

[6]<u>See</u> app. <u>infra</u> pp. 43-45.

[7]While Palmolive contends that the Corus and NEBF mortgages differ depending upon whether the Building's rehabilitation has been completed at the time of the casualty or damage, we do not address this point, because it is not relevant to the legal principles by which we resolve this case.

[8]Paragraph 20 of the Deed states: "Grantor represents and warrants that it has provided a copy of this instrument to all lienholders as of the date hereof, and

(continued...)

The NEBF subordination consists of identical wording, other than referring to NEBF rather than Corus. Thus, the nature and extent of the mortgagees' "subordination" is limited by paragraph 20 of the Deed.

Palmolive asserts (and the Commissioner has not disputed) that when Corus first made the loan in 2003 the building had been valued at approximately $190 million. On the basis of an appraisal, Palmolive asserts (and we assume, for purposes of the Commissioner's motion) that at the time of the donation of the easement in 2004, the total value of the property had increased to $257 million, of which 13%--i.e., $33.41 million--was attributable to the easement.

The Deed

The relevant sections of the Deed provided as follows (with emphasis added here):

> 7.  Insurance. The Grantor shall keep the Property insured * * * for the full replacement value against loss from the perils commonly insured under standard fire and-extended coverage policies and comprehensive general liability insurance against claims for personal injury, death, and property damage of a type and in such amounts as would, in the opinion of Grantee, normally be carried on a

[8](...continued)
the agreement of each lienholder to subordinate its mortgage to this Conservation Right is attached hereto." The executed subordinations, including the quoted Corus mortgage subordination, are so attached to the Deed. Thus, each subordination references the Deed, and the Deed references both subordination documents.

structure such as the Property * * *. <u>Such insurance shall include Grantee's interest, name Grantee as an additional insured</u>, provide for at least ten (10) days' notice to Grantee before cancellation, provide that the act or omission of one insured will not invalidate the policy as to the other insured party and be in a form reasonably acceptable to Grantee in the exercise of its reasonable judgment; Grantee disclaims its right to direct use and application of insurance proceeds except as such application relates to the physical restoration of the Facade pursuant to the terms hereof and does not conflict with the provisions of Paragraph 20(a) hereof.

Furthermore, Grantor shall deliver to Grantee fully executed certificates evidencing the aforesaid insurance coverage at the commencement of this grant and copies of certificates for new or renewed policies at least ten (10) days prior to the expiration of such policy. <u>Grantee shall have the right to provide insurance at the Grantor's cost and expense, should Grantor fail to obtain same. In the event Grantee obtains such insurance, the cost of such insurance shall be a lien on the Property until repaid by Grantor.</u> Whenever the Property or Building (or any portion thereof) is encumbered with any recorded mortgage given in connection with a promissory note secured by the Property and held by a Mortgagee (as defined in Paragraph 20), <u>nothing contained in this paragraph shall jeopardize the prior claim, if any, of the mortgagee/lender to the insurance proceeds</u>.

Notwithstanding anything to the contrary herein contained, <u>the lien of any mortgage or deed of trust</u> encumbering the Property or Building (or any portion thereof) and the provisions contained therein or in any loan document related thereto or in the REA[9] <u>shall be superior to the rights of Grantee</u> hereunder as they relate to (i) the right to use any insurance proceeds or condemnation

---

[9]The "REA" is the "Amended and Restated Declaration of Covenants, Conditions, Restrictions, and Easements" dated June 13, 2003, by which the facade rights were initially conveyed to Facade LLC. The acronym REA, unexplained in our record, may stand for "reciprocal easement agreement".

awards to restore the Property or for application to the debt secured thereby, and (ii) the manner in which any such proceeds or awards are to be disbursed and (iii) the rights or claims to any such proceeds or awards.

\*       \*       \*       \*       \*       \*       \*

17.     <u>Stipulated Value of Grantee's Interest</u>. Grantor acknowledges that upon execution and recording of this Conservation Right, Grantee shall be immediately vested with a real property interest in the Property and that such interest of Grantee shall have a stipulated fair market value, <u>for purposes of allocating net proceeds in an extinguishment pursuant to Paragraph 19, equal to the ratio between the fair market value of the Conservation Right and the fair market value of the Property prior to considering the impact of the Conservation Right</u> (hereinafter the "Conservation Right Percentage") as determined in the Qualified Appraisal provided to the Grantee pursuant to Paragraph 18. Upon submission of the Qualified Appraisal, the Grantor and Grantee shall sign an instrument verifying the Conservation Right Percentage and record it as an amendment to this Conservation Right; such Conservation Right Percentage may not be changed, modified or amended without the execution by Grantor and Grantee and recording of an amendment to this Conservation Right.

\*       \*       \*       \*       \*       \*       \*

19.     <u>Extinguishment</u>. Grantor and Grantee hereby recognize that an unexpected change in the conditions surrounding the Property may make impossible the continued ownership or use of the Property for the preservation and conservation purposes and necessitate extinguishment of the Conservation Right. Such a change in conditions includes, but is not limited to, partial or total destruction of the Property resulting from a casualty of such magnitude that Grantee approves demolition as provided in Paragraph 5 and/or agrees that repair or replacement is not practical. Such an extinguishment must comply with the following requirements:

(a)     The extinguishment must be the result of a final, non-appealable judicial proceeding;

(b)     Grantee shall be entitled to a share in any net proceeds to Grantor resulting from or related to the extinguishment in an amount equal to the Conservation Right Percentage determined pursuant to Paragraph 17 multiplied by the net proceeds actually paid to the Grantor pursuant to the REA.  Grantor hereby covenants and agrees that, without the prior written consent of Grantee, it shall not consent to or approve any amendment to the REA which would reduce the amount of net proceeds payable to Grantor as currently provided in the REA.

*     *     *     *     *     *     *

(d)     Net proceeds shall include, without limitation, insurance proceeds, condemnation proceeds or awards, proceeds from a sale in lieu of condemnation, and proceeds from the sale, financing or exchange by Grantor of any portion of the Property after the extinguishment, but shall specifically exclude any preferential claim of a Mortgagee under Paragraph 20.

(e)     It is the intention of Grantor that the provisions of this Paragraph 19 comply with all applicable requirements of the Income Tax Regulations governing qualified conservation contributions, particularly (without limitation) the requirements of Section 1.170A-14(g)(6) thereof.  In the event that any of the provisions of this Paragraph 19 conflict or are inconsistent with or otherwise do not comply with such Regulations, they shall be deemed to be amended to the extent necessary to eliminate such conflict or inconsistency and to bring them into full compliance with such regulations; provided, however, that any such "deemed amendment" which materially adversely affects a Mortgagee's rights under this Conservation Right or which materially increases the burdens or obligations of a Mortgagee, if any, hereunder, shall require the consent of any Mortgagee so affected.

20. <u>Subordination of Mortgages</u>. Grantor and Grantee agree that all mortgages and rights in the Property of all mortgagees and holders of other liens and encumbrances (collectively "lienholders") are subject and subordinate at all times to the rights of the Grantee to enforce the purposes of this Conservation Right. Grantor represents and warrants that it has provided a copy of this instrument to all lienholders as of the date hereof, and the agreement of each lienholder to subordinate its mortgage to this Conservation Right is attached hereto. The following provisions apply to all Mortgagees (as defined in Paragraph 20(f) below):

(a) If a mortgage grants to a Mortgagee the right to receive the proceeds of condemnation proceedings arising from any exercise of the power of eminent domain as to all or any part of the Property or the right to receive insurance proceeds as a result of any casualty, hazard, or accident occurring to or about the Property, <u>the Mortgagee shall have a prior claim to the insurance and condemnation proceeds and shall be entitled to same in preference to Grantee until the mortgage is paid off</u> and discharged, notwithstanding that the mortgage is subordinate in priority to this Conservation Right.

\* \* \* \* \* \* \*

(c) <u>Until</u> a Mortgagee or purchaser at foreclosure obtains ownership of the Property following foreclosure of its Mortgage or deed in lieu of foreclosure, <u>the Mortgagee or purchaser shall have no obligation</u>, debt, or liability under this Conservation Right and then <u>only for obligations arising or matters occurring after the transfer of title. In the event of foreclosure or deed in lieu of foreclosure, the Conservation Right shall not be extinguished.</u>

\* \* \* \* \* \* \*

    (e)    <u>Nothing</u> contained in the above paragraphs or in this Conservation Right <u>shall be construed to give any Mortgagee the right to extinguish this Conservation Right</u> by taking title to the Property by foreclosure or otherwise.
    [Emphasis added.]

<u>The IRS's examination, the FPAA, and the petition</u>

The IRS examined Palmolive's 2004 return, and in the FPAA the IRS determined that Palmolive did not adequately substantiate the contribution and that the deed did not meet the requirements of section 170. In the alternative, the IRS asserted that even if the contribution of the easement met those requirements, Palmolive did not establish that the easement had a value of $33,410,000. On October 1, 2014, Palmolive's petition was timely filed in this Court. Palmolive's principal place of business was in Illinois when the petition was filed.

Discussion

I.    <u>General principles</u>

    A.    <u>Summary judgment</u>

Where the material facts are not in dispute, a party may move for summary judgment to expedite the litigation and avoid an unnecessary trial. <u>Fla. Peach Corp. v. Commissioner</u>, 90 T.C. 678, 681 (1988). A partial summary adjudication is appropriate if some but not all issues in the case are disposed of summarily. <u>See</u> Rule 121(b); <u>Turner Broad. Sys., Inc. v. Commissioner</u>, 111 T.C. 315, 323-324

(1998). The party moving for summary judgment bears the burden of showing that there is no genuine dispute as to any material fact, and factual inferences are to be drawn in the manner most favorable to the party opposing summary judgment. Dahlstrom v. Commissioner, 85 T.C. 812, 821 (1985); Jacklin v. Commissioner, 79 T.C. 340, 344 (1982). Whether the easement deed satisfied the perpetuity requirements of section 170(h) of the Code and section 1.170A-14(g)(6)(ii) and -14(g)(2) of the regulations is a legal question appropriate for decision by summary judgment. See Tempel v. Commissioner, 136 T.C. 341, 344-345 (2011), aff'd sub nom. Esgar Corp. v. Commissioner, 744 F.3d 648 (10th Cir. 2014). Both parties have moved for partial summary judgment; and since we will grant the Commissioner's motion for partial summary judgment, we draw factual inferences in favor of Palmolive.

B.    Conservation contributions

A taxpayer is generally allowed a deduction for any charitable contribution made during the taxable year. Sec. 170(a)(1). A charitable contribution is a gift of property to a charitable organization made with charitable intent and without the receipt or expectation of receipt of adequate consideration. See Hernandez v. Commissioner, 490 U.S. 680, 690 (1989); United States v. Am. Bar Endowment, 477 U.S. 105, 116-118 (1986); see also 26 C.F.R. sec. 1.170A-1(h)(1) and (2),

Income Tax Regs. The Code generally disallows a charitable contribution deduction for a gift of property consisting of less than an entire interest in that property, see sec. 170(f)(3)(A), but provides an exception for a "qualified conservation contribution", see sec. 170(f)(3)(B)(iii).

Under section 170(h)(1), a qualified conservation contribution must be a contribution of a "qualified real property interest * * * to a qualified organization * * * exclusively for conservation purposes." See also 26 C.F.R. sec. 1.170A-14(a), Income Tax Regs. The Commissioner's motion addresses the third requirement--whether Palmolive's contribution of the conservation easement to LPCI was exclusively for conservation purposes.

A contribution is made exclusively for conservation purposes only if, at the time of the contribution, it meets the requirements of section 170(h)(5). See Glass v. Commissioner, 124 T.C. 258, 277 (2005), aff'd, 471 F.3d 698 (6th Cir. 2006); Mitchell v. Commissioner, T.C. Memo. 2013-204, aff'd, 775 F.3d 1243 (10th Cir. 2015). Section 170(h)(5)(A) provides that "[a] contribution shall not be treated as exclusively for conservation purposes unless the conservation purpose is protected in perpetuity".[10] (Emphasis added.)

_____

[10]Section 170(h)(5)(A), which addresses the perpetuity of the conservation purpose, thus echoes the prior provision of section 170(h)(2)(C) that an easement

(continued...)

C.     Perpetuity requirement

Section 1.170A-14(g)(1) of the regulations[11] provides generally that, in order for the conservation purpose of a donation to be enforceable in perpetuity, the "interest in the property retained by the donor * * * must be subject to legally enforceable restrictions * * * that will prevent uses of the retained interest inconsistent with the conservation purposes of the donation." The various subparagraphs of section 1.170A-14(g) set forth many of these legally enforceable

---

[10](...continued)
can be a "qualified real property interest" only if it is "a restriction (granted in perpetuity) on the use which may be made of the real property". (Emphasis added.) Thus, the "perpetuity" of the grant is essential both for the donated property to be a "qualified real property interest" (under subsection (h)(2)(C)) and for the purpose of the grant to be "exclusively for conservation purposes" (under subsection (h)(5)(A)). See also 26 C.F.R. sec. 1.170A-14(b)(2), (g), Income Tax Regs. "Though both requirements speak in terms of 'perpetuity,' they are not one and the same." Belk v. Commissioner, 774 F.3d 221, 228 (4th Cir. 2014), aff'g 140 T.C. 1 (2013). The "perpetuity" regulations at issue here are elaborations on the latter requirement--"exclusively for conservation purposes"--and we analyze them as such.

[11]The principles implicated in this case are founded on the "perpetuity" requirements in the statute (section 170), but the specific rules to be analyzed appear in the regulations (section 1.170A-14(g)), promulgated pursuant to section 7805(a). We defer to such regulations. See Altera Corp. & Subs. v. Commissioner, 145 T.C. 91, 114-115 (2015) (citing Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842 (1984), and Mayo Found. for Med. Educ. & Research v. United States, 562 U.S. 44, 55-58 (2011)). Palmolive has not disputed the validity of these regulations.

restrictions, see Mitchell v. Commissioner, 138 T.C. 324, 330 (2012), three of which we now outline.

1.    Mortgages

Whether a mortgage on property exists can obviously affect whether a donation of an easement on the property has any lasting value. If a piece of property were worth $100 million, and if 13% of its value--i.e., $13 million--were attributable to an easement that was donated to a qualifying organization, the donee organization's retention of 13% of the property's value over time could be much affected by a mortgage if the donee's easement was subordinate to that mortgage. If the property were "under water"--with mortgage debt in an amount that equaled or exceeded its value of $100 million--then a donee who received an easement right that was subordinate to that mortgage would have received a donation worth zero. Similarly, if the mortgage debt on the $100 million property were only $87 million but that mortgage was superior to the donee's easement right, and if the value of the property decreased to $87 million by the time of a condemnation or forced sale, then the mortgagee could be made whole upon foreclosure, but the donee's subordinate right to the easement would be worth nothing. The presence of a mortgage can thus threaten the perpetuity of the donee's interest in the property.

Section 1.170A-14(g)(2) of the regulations therefore addresses mortgages,

and it provides:

> (2)    Protection of a conservation purpose in case of donation
> of property subject to a mortgage.--In the case of conservation
> contributions made after February 13, 1986, no deduction will be
> permitted under this section for an interest in property which is
> subject to a mortgage unless the mortgagee subordinates[12] its rights
> in the property to the right of the qualified organization to enforce the
> conservation purposes of the gift in perpetuity.  For conservation
> contributions made prior to February 14, 1986, the requirement of
> section 170(h)(5)(A) is satisfied in the case of mortgaged property
> (with respect to which the mortgagee has not subordinated its rights)
> only if the donor can demonstrate that the conservation purpose is
> protected in perpetuity without subordination of the mortgagee's
> rights.  [Emphasis added.]

The different regime for contributions before February 1986 should be noted:

Literal subordination was not required, as long as "protect[ion] in perpetuity" by

other means could be demonstrated.  For subsequent contributions, "no deduction

will be permitted" without subordination.

---

[12]"[A] subordination agreement is simply a contract in which a creditor (the
'subordinated' or 'junior' creditor [here, the mortgagee]) agrees that the claims of
specified senior creditors [here, the donee] must be paid in full before any
payment on the subordinated debt may be made to, and retained by, the
subordinated creditor." New York Stock Exch. v. Pickard & Co., 296 A.2d 143,
147 (Del. Ch. 1972).

2.      Extinguishment

Section 1.170A-14(g)(6)(i) of the regulations entitled "Extinguishment",

recognizes that after the donee organization's receipt of an interest in property, an

unexpected change in the conditions surrounding the property may make

impossible or impractical the continued use of the property for conservation

purposes, and a court may "extinguish" the conservation restrictions.  Section

1.170A-14(g)(6)(i) provides:

> If a subsequent unexpected change in the conditions surrounding the
> property that is the subject of a donation under this paragraph can
> make impossible or impractical the continued use of the property for
> conservation purposes, the conservation purpose can nonetheless be
> treated as protected in perpetuity if the restrictions are extinguished
> by judicial proceeding and all of the donee's proceeds * * * from a
> subsequent sale or exchange of the property are used by the donee
> organization in a manner consistent with the conservation purposes of
> the original contribution.

3.      Proceeds from extinguishment

Subdivision (ii) of section 1.170A-14(g)(6) is entitled "Proceeds" and

requires that, at the time of the gift, the donor must agree that the donation of the

perpetual conservation restriction gives rise to a property right, immediately

vested in the donee organization, with a fair market value that, at the time of the

gift, is at least equal to the proportionate value that the perpetual conservation

restriction bears to the value of the property as a whole.  Moreover, section

1.170A-14(g)(6)(ii) states in pertinent part:

> In case of a donation made after February 13, 1986, for a deduction to be allowed under this section, at the time of the gift the donor must agree that <u>the donation of the perpetual conservation restriction gives rise to a property right</u>, immediately vested in the donee organization, with a fair market value that is at least equal to the proportionate value that the perpetual conservation restriction at the time of the gift bears to the value of the property as a whole at that time.  * * *  Accordingly, when a change in conditions gives rise to the extinguishment of a perpetual conservation restriction under paragraph (g)(6)(i) of this section, <u>the donee organization,</u> on a subsequent sale, exchange, or involuntary conversion of the subject property, <u>must be entitled to a portion of the proceeds at least equal to that proportionate value of the perpetual conservation restriction</u> * * *. [Emphasis added.]

II.    The parties' contentions

A.    The Commissioner's contentions

The Commissioner argues that Palmolive's easement deed does not satisfy

the perpetuity requirements of section 170(h)(5)(A) and section 1.170A-

14(g)(6)(ii) because the Deed provides that Palmolive's mortgagees, Corus and

NEBF, have prior claims to any extinguishment proceeds in preference to LPCI

and that this priority violates the requirement that LPCI have a guaranteed right to

a proportionate share of future proceeds.

The Commissioner also argues that those same provisions in the Deed render the subordinations of NEBF and Corus insufficient to satisfy section 1.170A-14(g)(2), which requires that if the underlying property of a donated conservation easement is subject to a mortgage, then that mortgage must be subordinated to the right of the donee to enforce the conservation purposes of the gift in perpetuity. Both parties' arguments as to that section focus on what it means that a donee has the right to enforce the "conservation purposes of the gift in perpetuity".

### B. Palmolive's contentions

Palmolive argues that, as to section 1.170A-14(g)(6), the Commissioner's position was expressly rejected in Kaufman v. Shulman (Kaufman III), 687 F.3d 21 (1st Cir. 2012), aff'g in part, vacating in part, and remanding in part Kaufman v. Commissioner, 136 T.C. 294 (2011), and 134 T.C. 182 (2010), and that this Court should follow the Court of Appeals' interpretation of the perpetuity requirement. In the alternative, Palmolive argues that even if the Deed does otherwise violate the proceeds requirement of section 1.170A-14(g)(6)(ii), the

Deed contains a saving clause[13] that retroactively reforms the deed to comply with the regulation.

As to section 1.170A-14(g)(2), Palmolive argues that: first, the mortgages burden the facade only incidentally; second, that the purpose of this rule is fulfilled by the Deed's prohibition of "extinguishment" by the mortgagee; third, that the chain of events necessary for a priority problem to affect LPCI renders such a problem so remote as to be negligible, so that the priority provisions should not defeat the deduction; and fourth, that any liens which might burden the building after the execution of the Deed do not come within the purview of section 170(h).

III.    Analysis

We agree with the Commissioner's application of the regulation and reaffirm our holdings in Kaufman v. Commissioner (Kaufman I), 134 T.C. 182 (2010), and Kaufman v. Commissioner (Kaufman II), 136 T.C. 294 (2011).

---

[13]The Commissioner refers to paragraph 19(e) of the easement deed as an "escape clause" because "saving clause" and "formula clause" are terms of art whose definitions the clause at issue does not meet. See Estate of Petter v. Commissioner, T.C. Memo. 2009-280, slip op. at 25-33, aff'd, 653 F.3d 1012 (9th Cir. 2011). We will refer to this clause as a saving clause but we do so without deciding whether the clause at issue is a disfavored saving clause or a favored formula clause as explained in Estate of Petter.

A.    <u>The Deed does not satisfy the perpetuity requirement of section 170(h)(5)(A)</u>.

      1.    <u>Section 1.170A-14(g)(2) of the regulations requires that the mortgages be subordinated</u>.

           a.    <u>Actual subordination is required</u>.

In sum, the mortgages on Palmolive's property were not subordinated to the easement.  Of course, the subordination requirement of section 1.170A-14(g)(2), i.e., that--

> no deduction will be permitted * * * for an interest in property which is subject to a mortgage <u>unless the mortgagee subordinates its rights</u> in the property to the right of the * * * [donee] organization to enforce the conservation purposes of the gift in perpetuity. * * * [Emphasis added.]

--is not satisfied simply by including in the Deed a section captioned "Subordination of Mortgages", without regard to what the Deed actually provides and what the mortgagee actually agrees to.  Rather, the mortgagee must actually subordinate its interest.  The incorporation of the Deed at issue in the mortgagees' purported subordination documents does not do so, and in significant respects it does the opposite.  Paragraph 20(a) of the Deed provides:

> [T]he Mortgagee shall have a <u>prior claim</u> to the insurance and con-demnation proceeds and shall be entitled to same <u>in preference to Grantee</u> until the mortgage is paid off and discharged, notwithstand-ing that the mortgage is subordinate in priority to this Conservation Right.  [Emphasis added.]

In these documents, "subordinate" is defined to include its opposite: The mortgage is said to be "subordinate", but in fact the mortgagee has "a prior claim". This does not satisfy the regulation.

> b. Supposed prevention of the extinguishment of the easement by foreclosure is not an adequate substitute for subordination.

Palmolive argues that "[Palmolive] satisfied * * * [section 1.170A-14(g)(2)], because it expressly subordinates all of the Mortgagees' property rights in the façade, so that they cannot extinguish the Easement through foreclosure." Palmolive proposes that "the Regulation simply requires that the mortgage subordination to be [sic] in place at the time the easement is granted, to ensure the mortgage holder is at no point able to extinguish the easement by foreclosing on the underlying property". That is, in Palmolive's view the purpose of the subordination requirement is satisfied as long as extinguishment of the easement by foreclosure is prevented.[14] For this proposition Palmolive cites our opinion in

_____

[14]Palmolive cites two section 170 subordination cases--Mitchell v. Commissioner, 775 F.3d 1243 (10th Cir. 2015), aff'g T.C. Memo. 2013-204, and Minnick v. Commissioner, 796 F.3d 1156 (9th Cir. 2015), aff'g T.C. Memo 2012-345,--in which mortgagees did not subordinate their mortgages until after the easements were donated and in which section 1.170A-14(g)(2) was therefore held not to have been satisfied; and Palmolive distinguishes these cases with the assertion that its own subordination documents, executed contemporaneously with the easement Deed, do not present the timing problem that was present in Minnick

(continued...)

Minnick v. Commissioner, T.C. Memo. 2012-345, aff'd, 796 F.3d 1156 (9th Cir. 2015), and argues:

> In Minnick this Court explained that the Regulation was specifically intended to prevent extinguishment through foreclosure by the mortgagee (U.S. Bank): "Without a subordination agreement, U.S. Bank would have been able to seize the land in the event of default on the mortgage, thus owning the land free of the conservation easement." T.C. Memo 2012-345 at *7.

In fact, in Minnick we did not thus reduce the significance of the regulation to the mere prevention of extinguishment. We did observe (as Palmolive quotes) that the failure to subordinate would have enabled the mortgagee in Minnick to "own[] the land free of the conservation easement" (an arrangement obviously contrary to the regulation), but we did not hold that the regulation is satisfied as long as extinguishment by foreclosure is avoided.

If section 1.170A-14(g)(2) was intended to mean "subordinates its right to foreclose on the property" rather than "subordinates its rights in the property" (emphasis added) (as it actually does), then it would read accordingly. It does not. The supposedly subordinate mortgagee's actual priority in this deed includes a

---

[14](...continued)
and Mitchell. See also RP Golf, LLC v. Commissioner, T.C. Memo. 2016-80, aff'd, 860 F.3d 1096 (8th Cir. 2017). The assertion is accurate, but it does not address the problem that is present here, viz, Palmolive's purported subordination documents do not actually effect a subordination.

prior claim with respect to insurance proceeds, a priority that is at odds with true

subordination.

      c.      <u>Subordination of a mortgage must include subordination as to insurance proceeds in the event the property is destroyed</u>.

It is true that the mortgage provisions of section 1.170A-14(g)(2), unlike the

extinguishment provisions of paragraph (g)(6) (discussed below in part III.A.2),

do not explicitly mention proceeds. It is evidently this fact that prompts Palmolive

to argue that--

> the subordination requirement of Section 1.170A-14(g)(2) * * * does not require or permit consideration of the use of insurance proceeds prior to extinguishment. In addition, because a donee has no rights to insurance or other proceeds prior to extinguishment, a mortgagee's priority to such proceeds has no impact on the donee's rights under the easement.

We assume arguendo that there is no absolute and universal requirement that the

donee of a facade easement must necessarily have a right to share in insurance

proceeds on the property. Perhaps an owner of property free and clear of any

mortgage could make a valid contribution of a facade easement, could thereafter

pay for insurance on only its retained interest in the property (minus the facade),

could leave it to the donee to decide whether to purchase insurance on the donee's

interest in the facade, and could retain the entire amount of any subsequent

proceeds from its insurance on the retained property. But that hypothetical circumstance is quite different from the circumstance at issue.[15]

Rather, here the property was not free and clear. Instead, the owner had borrowed money and had used the property--the entire property, including the facade--as collateral for his loans. Consequently, the entire property was subject to mortgages. Likewise, the entire property (including the facade) was insured. That insurance (on the entire property) became part of the mortgagees' assurance that their loans (on the entire property) would be repaid. Thus, notwithstanding Palmolive's donation of the facade easement, the facade continued to benefit Palmolive by serving as collateral for Palmolive's loans, and continued to benefit Palmolive and its lenders by supporting insurance coverage[16] that might yield

---

[15]Likewise, we need not address the hypothetical circumstance in which a donor (or mortgagee) retained a higher priority to insurance proceeds to be paid for repairs and maintenance, but conferred on the donee of an easement a higher priority claim to insurance proceeds in the event of a complete destruction. Unlike section 1.170A-14(g)(6)(ii) see infra pt. III.A.2, section -14(g)(2) does not explicitly require that the donee receive a "property right". Whether paragraph (g)(2) could be satisfied by the donee's receiving instead the mere contractual obligation of the donor (or his mortgagee) to make repairs from insurance proceeds, as long as the donee received true priority in the event the property was destroyed, is a question that does not arise in this case, where the problem is a wholesale failure to subordinate the mortgagees' rights to insurance proceeds.

[16]Palmolive does not dispute that the owner of a facade easement has an insurable interest in the property.

proceeds to repay Palmolive's loans from the mortgagees. This circumstance would leave the donee, LPCI, at risk: If the property (along with the facade) were destroyed by fire or otherwise, the unsubordinated mortgagees would stand at the head of the line to receive insurance proceeds; and if the proceeds were not adequate to pay off the loans, then LPCI might in the end receive nothing. LPCI's supposedly perpetual interest in the facade would in fact have served Palmolive and the mortgagees (by serving as collateral and supporting insurance coverage) but would result in no benefit to LPCI.

Where an owner of property subject to a mortgage and covered by insurance would seek to donate a perpetual easement interest in a facade, the owner may not surreptitiously hold back an interest in the facade by using it as collateral for mortgage loans and exploiting insurance coverage on it to repay the owner's mortgage debt. Rather, the mortgagee's "rights in the property" (as collateral for its loans and as predicate for insurance proceeds) must be subordinated to the interests of the donee.

2. <u>Section 1.170A-14(g)(6) of the regulations requires that the donee receive a "property right" that entitles it to receive proceeds from any disposition after extinguishment</u>.

Section 1.170A-14(g)(6)(ii) allows a donation only where a contribution "gives rise to a property right", and the regulation provides that "the donee organization * * * must be entitled to a portion of the proceeds [from sale, exchange, or involuntary conversion after extinguishment] at least equal to that proportionate value of the perpetual conservation restriction"; but here the Deed assures its mortgagees that this need not be the case. The supposedly prior easement donee will <u>not</u> receive proceeds unless and until the supposedly subordinate mortgages have been fully satisfied. If there were any doubt, section 19 ("Extinguishment") provides, to the same effect, that the "[n]et proceeds" in which the donee will be entitled to share "shall specifically exclude any <u>preferential claim of a Mortgagee</u> under Paragraph 20." (Emphasis added.)

To propose that the mortgagee is subordinate <u>except</u> as to proceeds from extinguishment is to create an exception that might overwhelm the proposition. Receiving proceeds in the event of a condemnation is a critical right and interest of the mortgagee; and if that right and interest is not subordinated, then the donee's "property right" to proceeds is undermined. Palmolive's arrangement does not reflect the actual subordination of the mortgage.

This is not the first time we have faced the question of deductibility of a donated facade easement where the building was subject to a mortgage that was not properly subordinated with respect to proceeds in the event of condemnation or extinguishment. We applied section 1.170A-14 regulations to such a case in Kaufman I, and found that the donated easement failed to satisfy the proceeds requirement of paragraph (g)(6)(ii). Kaufman I, 134 T.C. 182. We denied the Kaufmans' motion for reconsideration in Kaufman II. Kaufman II, 136 T.C. 294.

The taxpayers appealed our decision, and the Court of Appeals for the First Circuit held that the Kaufmans had satisfied section 1.170A-14(g)(6)(ii), Kaufman III, 687 F.3d 21. That court held that "the IRS's reading of its regulation [section 1.170A-14(g)(6)(ii)] would appear to doom practically all donations of easements, which is surely contrary to the purpose of Congress", since it believed that, under the same reasoning, it could be argued that in the case of virtually any easement donation possible future tax liens might end up taking priority over an easement holder's proceeds claim. Id. at 27 (an argument we will address below).[17] This

_____

[17]The Court of Appeals reversed in part and remanded. On remand, we applied the court's interpretation of the regulation as directed in Kaufman III, but we found that the Kaufmans' donated easement had no value and consequently they were not entitled to a deduction in any case. Kaufman v. Commissioner (Kaufman IV), T.C. Memo. 2014-52. The Court of Appeals affirmed that conclusion in Kaufman v. Commissioner ("Kaufman V"), 784 F.3d 56 (1st Cir.

(continued...)

Court "follow[s] a Court of Appeals decision which is squarely in point where appeal from our decision lies to that Court of Appeals and to that court alone." Golsen v. Commissioner, 54 T.C. at 757. However, in this case, appealable to a different Court of Appeals, we are not bound to follow this decision of the Court of Appeals for the First Circuit, and we respectfully decline to do so, for the reasons explained herein.

In Kaufman II, 136 T.C. at 313, we explained as follows our reading of section 1.170A-14(g)(6):

> [S]ection 1.170A-14(g)(6), Income Tax Regs., provides that the donee must ab initio have an absolute right to compensation from the postextinguishment proceeds for the restrictions judicially extinguished. It is Lorna Kaufman's failure to accord [the easement donee] an absolute right to a fixed share of the postextinguishment proceeds that causes her gift to fail the extinguishment provision. It is not a question as to the degree of improbability of the changed conditions that would justify judicial extinguishment of the restrictions. Nor is it a question of the probability that, in the case of judicial extinguishment following an unexpected change in conditions, the proceeds of a condemnation or other sale would be adequate to pay both the [mortgagee] bank and * * * [the easement donee]. As we said in * * * [Kaufman I], the requirement in section 1.170A-14(g)(6)(ii), Income Tax Regs., that * * * [the easement donee] be entitled to its proportionate share of the proceeds is not conditional: "Petitioners cannot avoid the strict requirement in section 1.170A-14(g)(6)(ii), Income Tax Regs., simply by showing that they

---

[17](...continued)
2015), where the Kaufmans did not dispute that finding.

would most likely be able to satisfy both their mortgage and their obligation to NAT."

In Kaufman III, 687 F.3d at 27, the Court of Appeals took issue with our conclusion that taxpayers are obligated to show "an absolute right" to proceeds of a condemnation or other sale and explained its key disagreement as follows:

> The IRS reads the word "entitled" in the extinguishment regulation to mean "gets the first bite" as against the rest of the world, a view the Tax Court accepted in reading "entitled" to mean "ha[s] an absolute right." * * * But a grant that is absolute against the owner-donor is also an entitlement, Black's Law Dictionary (7th ed. 1999) ("entitle" defined as "[t]o grant a legal right to"); Collins English Dictionary (10th ed.2009) ("to give (a person) the right to do or have some-thing"), and almost the same as an absolute one where third-party claims (here, the bank's or the city's) are contingent and unlikely.

> Equally important, given the ubiquity of super-priority for tax liens, the IRS's reading of its regulation would appear to doom practically all donations of easements, which is surely contrary to the purpose of Congress. * * *

That is, the Court of Appeals observed that if any owner donates a facade easement and thereafter fails to pay taxes, a lien on the property may arise-- notwithstanding the facade easement--in favor of the Government. Such tax liens (the court noted) have a "super-priority" that would not be subordinated to the facade easement donee's interest. If the Government thereafter were to collect the tax by levy upon the property--selling it and using the proceeds to satisfy the tax

liability--the conservation purpose of the contribution might not be protected "in perpetuity" but might instead be overwhelmed by the tax lien.  Since that possibility exists in virtually any instance, no donee has <u>ever</u> had an absolute entitlement to proceeds (the court reasons), so either no deduction can ever be allowed for any easement (an outcome supposedly required by the position of the IRS and this Court) or instead all that the regulation requires is that the donee be "entitled" to proceeds vis-a-vis the donor (and not vis-a-vis third parties, such as the Government or a mortgagee).  The Court of Appeals thus viewed the word "entitled" as ambiguous, resorted to congressional intent in deciding how to construe the regulation, determined that it could not prefer the reading that yielded an extreme outcome "surely contrary to the purpose of Congress", and concluded that "entitled" must mean entitled "as against the grantor" rather than entitled "as against all other parties in interest".

We disagree with the Court of Appeals' view that our interpretation of the regulations would "doom practically all donations of easements" because the donor can never subordinate possible future tax liens.  First, a hypothetical tax lien that may arise in the future is very different from the actual security interest of a mortgagee that exists--and precedes the facade easement--at the time of the donation.  We and at least two Courts of Appeals have consistently analyzed

conservation restrictions on the basis of property rights and interests that exist when the easement is granted, rather than conducting an analysis based on speculations of property interests that might arise in the future (as the court appears to have hypothesized in Kaufman III). See Minnick v. Commissioner, 796 F.3d 1156; Mitchell v. Commissioner, 775 F.3d 1243. The "absolute" entitlement to proceeds that we held necessary in Kauffman I and II was the donee's entitlement vis-a-vis the donor and her mortgagee--i.e., the parties who had interests in the property at the time of the donation.

Second, we believe that this analogy to hypothetical third-party claims such as tax liens is inapposite. The donation of easements to property subject to mortgages is a matter of explicit concern in the regulations, which provide specific rules governing the subordination of mortgages, and taxpayers must comply with those rules to be entitled to a deduction for such contributions. The regulations prescribe no equivalent rules relating to tax liens, and we would not expect taxpayers to imagine and comply with nonexistent regulations requiring subordination of tax liens which are nonexistent at the time of the contribution.

We also disagree with the Court of Appeals that its construction of the regulation (i.e., that it requires only that the donee be "entitled [to proceeds] as against the donor" and not as against third parties with interests in the property) is

more consistent with "the purpose of Congress." Kaufman III, 687 F.3d at 27.

The court did not cite legislative history to demonstrate congressional purpose,

and we believe the legislative history shows otherwise.[18] The Senate Finance

Committee report for the Tax Treatment Extension Act of 1980, Pub. L. No. 96-

541, sec. 6, 94 Stat. at 3206 (which added section 170(h)(5)(A) to the Code),

states, with regard to section 170(h)(5)(A): "By requiring that the conservation

purpose be protected in perpetuity, the committee intends that the perpetual

restrictions must be enforceable by the donee organization (and successors in

interest) against all other parties in interest (including successors in interest.)"

S. Rept. No. 96-1007, at 14 (1980), 1980-2 C.B. 599, 605 (emphasis added).[19]

---

[18]See Caltex Oil Venture v. Commissioner, 138 T.C. 18, 34 (2012) ("It is well settled that where a statute is ambiguous, we may look to legislative history to ascertain its meaning" (citing Burlington N.R.R. v. Okla. Tax Comm'n, 481 U.S. 454, 461 (1987))); see also Palahnuk v. Commissioner, 544 F.3d 471, 474 (2d Cir. 2008) ("Extrinsic materials have a role in statutory interpretation only to the extent they shed a reliable light on the enacting legislature's understanding of otherwise ambiguous terms."), aff'g 127 T.C. 118 (2006).

[19]This sentence in the Senate report is mirrored in a report on H.R. 7956, 96th Cong. (1980) by the House Ways and Means Committee. H.R. Rept. No. 96-1278, at 18-19 (1980). H.R. 7956, when passed, did not amend section 170 of the Code. However, a Senate Finance Committee report explains that the latter committee removed the section 170 amendments from H.R. 7956 because they had already been passed in H.R. 6975, 96th Cong., sec. 6 (1980). H.R. 6975, when enacted, became the Tax Treatment Extension of Act of 1980, Pub. L. No. 96-541, sec. 6, 94 Stat. at 3206, which did enact the section 170 provisions with which this

(continued...)

We think this tends against the Court of Appeals' conclusion that reading "entitled" to mean only "a grant that is absolute against the owner-donor" would be more consistent with "the purpose of Congress." Kaufman III, 687 F.3d at 27. Rather, it was evidently the intention of Congress that the donee stand at the head of the line against "all other parties in interest", including the donor's mortgagees.

> 3. Section 1.170A-14(g)(3) of the regulations does not excuse non-compliance with section -14(g)(2) and (g)(6).

Section 1.170A-14(g)(3) provides:

A deduction shall not be disallowed under section 170(f)(3)(B)(iii) [i.e., for "a qualified conservation contribution"] and this section [i.e., section 1.170A-14 ("Qualified conservation contributions")] merely because the interest which passes to, or is vested in, the donee organization may be defeated by the performance of some act or the happening of some event, if on the date of the gift it appears that the possibility that such act or event will occur is so remote as to be negligible. * * *

Palmolive argues that the chances of the Building's being destroyed by a casualty and LPCI's not receiving its proportionate share of insurance proceeds are slim enough to render them "so remote as to be negligible". This line of argument misses the mark.

---

[19](...continued) case is concerned. S. Rept. No. 96-1036, at 2 (1980), 1980-2 C.B. 723, 724. In short, the House Ways and Means Committee and the Senate Finance Committee agreed on the meaning of "protected in perpetuity".

Paragraph (g)(3) of section 1.170A-14 is not an alternative provision on which taxpayers may rely if they otherwise fail to satisfy the express requirements of paragraph (g)(2)[20] or (g)(6).[21]  As to "some act" or "some event" not specified in the regulations that might be in tension with a "perpetual conservation restriction", paragraph (g)(3) provides that the charitable contribution deduction is not defeated if "the possibility that such act or event will occur is so remote as to be negligible".  However, regularly occurring circumstances that are expressly foreseen and are explicitly provided for in the regulations (i.e., mortgages and extinguishment proceeds) are by their nature not "remote", and the specific requirements in the regulations as to those contingencies are not affected by paragraph (g)(3).

---

[20]See Mitchell v. Commissioner, 775 F.3d at 1252; Carpenter v. Commissioner, T.C. Memo. 2012-1, slip op. at 8-9.

[21]See Kaufman II, 136 T.C. at 313; cf.  Kaufman III, 687 F.3d at 27 ("In reaching our conclusion, we do not rely on the general provision of subparagraph (g)(3) that aims to prevent deductions from being lost by improbable events, 26 C.F.R. § 1.170A-14(g)(3), because, as the Tax Court noted, '[o]ne does not satisfy the extinguishment provision . . . merely by establishing that the possibility of a change in conditions triggering judicial extinguishment is unexpected.'") (internal citations omitted); Carpenter v. Commissioner, T.C. Memo. 2012-1, slip op. at 9 ("This Court has previously found that the so-remote-as-to-be-negligible standard does not modify [sec. 1.170A-14(g)(6)(i)]").

Even if analyzing the "remote[ness]" of the contingencies were appropriate here, it would not save Palmolive's deduction, since the relevant contingencies were manifestly <u>not</u> remote. "[S]o remote as to be negligible" has been defined to refer to "a chance which persons generally would disregard as so highly improbable that it might be ignored with reasonable safety in undertaking a serious business transaction." <u>United States v. Dean</u>, 224 F.2d 26, 29 (1st Cir. 1955). In this case, however, the parties <u>did</u> foresee, and in the Deed they did make provision for, the contingency that it would not be possible both to satisfy outstanding mortgage obligations and to pay the easement donee the full amount of the "Conservation Right Percentage"; otherwise, the Deed would not provide (in paragraph 19(d)) that the "net proceeds" from which the donee's "Conservation Right Percentage" would be funded "shall specifically exclude any preferential claim of a Mortgagee". The parties themselves--Palmolive and the mortgagees-- did <u>not</u> disregard or ignore these contingencies but addressed them explicitly. They were not "so remote as to be negligible".

B.    The "saving" clause does not cure the Deed.

Alternatively, Palmolive argues that even if the Commissioner's interpretation of the regulation is correct, paragraph 19(e) of the Deed contains a saving clause that would apply to retroactively reform the Deed to comply with the regulations.  Paragraph 19(e) seems to sound good at the start--

> In the event that any of the provisions of this Paragraph 19 conflict or are inconsistent with or otherwise do not comply with such Regulations, they shall be deemed to be amended to the extent necessary to eliminate such conflict or inconsistency and to bring them into full compliance with such regulations * * *.[22]

--but then, by this immediately following proviso, the Deed expressly takes away any effect that it might have had on the subordination and proceeds issues:

> provided, however, that any such "deemed amendment" which materially adversely affects a Mortgagee's rights under this Conservation Right or which materially increases the burdens or obligations of a Mortgagee, if any, hereunder, shall require the consent of any Mortgagee so affected.

Taken in its entirety, this clause purports to correct the subordination and proceeds provisions, but only if the mortgagee consents.  The easement donee is therefore not assured in perpetuity of its right to insurance or condemnation proceeds, but

---

[22]As additional evidence of Palmolive's intent that the easement be granted in perpetuity, Palmolive points to paragraph 30(b), which provides that the Deed "shall be interpreted broadly to effect its preservation and conservation purposes." Palmolive says that paragraphs 19(e) and 30(b) demonstrate the parties' intent that the easement be granted in perpetuity.

instead is given a contingent prospect of receiving proceeds only if the eventual value of the property permits it or if the mortgagee agrees to suffer loss, to forfeit the repayment of its loan, and to gratuitously let the donee move to the front of the line.

Palmolive argues, however, that the saving clause can act as a deemed amendment to the Deed without the mortgagees' consent because Palmolive has sufficient equity in the property that the mortgagees' interests would not be "materially adversely effect[ed]" by altering the insurance proceeds terms in the Deed, and as a result, the mortgagees' consent was not necessary "prior to an automatic reformation of the Easement Deed." (This could only be true if the property did not decline in value and thereby diminish Palmolive's equity.)

Palmolive's attempted use of a saving clause to reform the Deed to comply with the regulation is not valid. We have previously held that the requirements of section 170 must be satisfied at the time of the gift. See Kaufman II, 136 T.C. at 309; Mitchell v. Commissioner, at *13-*14. Additionally, this Court and others have held that "[w]hen a savings clause provides that a future event alters the tax consequences of a conveyance, the savings clause imposes a condition subsequent and will not be enforced." Belk v. Commissioner, 774 F.3d 221, 229 (4th Cir. 2014), aff'g T.C. Memo. 2013-154; see also Commissioner v. Procter, 142 F.2d

824, 827 (4th Cir. 1944); <u>Estate of Christiansen v. Commissioner</u>, 130 T.C. 1, 13, (2008), <u>aff'd</u>, 586 F.3d 1061 (8th Cir. 2009). The saving clause cannot retroactively modify the Deed to comply with section 170 and its regulations.

Because the requirements of section 170 and its regulations were not satisfied at the time of the gift, the conservation easement is not protected in perpetuity and fails to qualify under section 170(h)(5)(A).[23]

To reflect the foregoing,

<u>An appropriate order will be</u>

<u>issued</u>.

Reviewed by the Court.

MARVEL, FOLEY, VASQUEZ, GALE, THORNTON, GOEKE, HOLMES, PARIS, MORRISON, KERRIGAN, BUCH, NEGA, PUGH, and ASHFORD, <u>JJ</u>., agree with this opinion of the Court.

LAUBER, <u>J</u>. did not participate in the consideration of this opinion.

---

[23]We note that the Commissioner has alternatively argued that the saving clause cannot reform the Deed because the saving clause is a disfavored saving clause that should be disallowed under <u>Commissioner v. Procter</u>, 142 F.2d 824 (4th Cir. 1944), because it would take back property from the mortgagee. We need not reach the merits of this argument.

APPENDIX

The relevant sections of the mortgage executed between Palmolive and

Corus stated:

MORTGAGOR [(Palmolive)] HEREBY HYPOTHECATES,
MORTGAGES, CONVEYS, TRANSFERS AND ASSIGNS TO
LENDER [(Corus)] AND ITS SUCCESSORS AND ASSIGNS,
FOREVER, AND HEREBY GRANTS TO LENDER AND ITS
SUCCESSORS AND ASSIGNS FOREVER A CONTINUING
SECURITY INTEREST IN, TO, AND UNDER ALL OF THE
FOLLOWING, WHETHER NOW OWNED OR HEREAFTER
ACQUIRED OR ARISING:

     (a)    Real Property.  The Property, together with all
* * * rights, easements, * * * now or hereafter belonging or in
anywise appertaining to the Property * * *; all air rights * * * relating
to the Property * * *

    *     *     *     *     *     *     *

     (f)    Insurance. * * * all proceeds of the conversion,
voluntary or involuntary, of the Collateral or any part thereof into
cash or liquidated claims, including, without limitation, proceeds of
hazard and title insurance and all awards and compensation * * * by
any governmental or other lawful authorities for the taking by
eminent domain, condemnation or otherwise, of all or any part of the
Collateral or any easement therein * * *

     (g)    Awards.  All judgments, awards of damages and
settlements which may result from any damage to the Property or any
part thereof or to any rights appurtenant thereto; all compensation,
awards, damages, claims, rights of action and proceeds of, or on
account of (i) any damage or taking pursuant to any Condemnation
Proceeding of the Property or any part thereof, or (ii) * * * all

proceeds of any sales or other dispositions of the Property or any part thereof;

The relevant sections of the mortgage executed between Palmolive and

NEBF stated:

Mortgagor [(Palmolive)], its successors and assigns, intending to be legally bound, does by these presents, irrevocably grant, transfer, assign, bargain, mortgage, warrant, hypothecate, pledge, set over and convey to Mortgagee [(NEBF)], with right of entry and possession as provided herein, with covenants of further assurances, all of its right, title and interest in and to the Real Estate * * *

TOGETHER with all the right, title and interest of Mortgagor * * * of, in and to * * * (b) all and singular the rights * * * appertaining to the Real Estate or any part thereof, including, but not limited to, (i) all rights, interests and benefits arising under or related to the Reciprocal Easement Agreement (as defined in the Loan Agreement and referred to herein as the "REA") * * *

\* \* \* \* \* \* \*

TOGETHER with all of Mortgagor's right, title and interest in and to * * * (e) all rights of Mortgagor to receive proceeds of any insurance, indemnity, warranty or guaranty with respect to the Related Contracts or the Mortgaged Property, * * * and (h) all proceeds of * * * all payments under insurance (whether or not the Mortgagee is the loss payee thereof) * * *

\* \* \* \* \* \* \*

TOGETHER with any and all payments, proceeds, settlements or other compensation heretofore or hereafter made, including any interest thereon, and the right to collect and receive the same, subject to the provisions of the Loan Documents, from any and all insurance policies required to be carried by Mortgagor pursuant to the Loan

Agreement or hereunder covering the Mortgaged Property or any portion thereof.

\* \* \* \* \* \* \*

8 <u>Insurance</u>.

8.1 <u>Policies</u>. Mortgagor shall maintain in full force and effect, at Mortgagor's sole cost and expense, the insurance required to be maintained by it pursuant to the provisions of Section 8.8 of the Loan Agreement and pursuant to the Reciprocal Easement Agreement. The insurance policies must be approved by Mortgagee in its sole discretion as to amount, form, deductibles and insurer, must cover all risks Mortgagee requires * * *